**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN THE MATTER OF | No. CV10-1772-PHX-DGC |
| Avondale Gateway Center Entitlement, LLC, | BK No.: 02-09-BK-12153-CGC |
| Debtor | |
| Avondale Gateway Center Entitlement, LLC, | **ORDER** |
| Appellant | |
| vs. | |
| National Bank of Arizona, *et al.*, | |
| Appellees. | |

This is a bankruptcy appeal from the United States Bankruptcy Court for the District of Arizona. Avondale (2010) Holdings, LLLP has moved to be substituted as appellee in this case pursuant to a transfer of interest from Appellee National Bank of Arizona ("NBA"). Doc. 10. The motion is unopposed. The Court will grant the motion. LRCiv. 7.2(i). To avoid confusion in the discussion that follows, the Court will refer to Avondale Holdings as "NBA" and Appellant Avondale Gateway Center Entitlement, LLC as "Avondale."

Avondale's appeal has been fully briefed. Docs. 8, 14, 17. For the reasons set forth

below, the Court will affirm the Bankruptcy Court's decision.[1]

## I.   Background.

The relevant facts are not in dispute. *Compare* Doc. 8 at 6-11 *with* Doc. 14 at 7-9. Avondale borrowed $30,700,000 from NBA and $18,000,000 from MMA Realty Capital, LLC ("MMA"), and the loans were secured by trustee deeds to vacant land. Doc. 8 at 6. The NBA trustee deed is a first-priority lien, and the MMA trustee deed is a second-priority lien. *Id.* Avondale, NBA, and MMA entered into a "Subordination and Intercreditor Agreement" ("Subordination Agreement") (*id.*), the relevant terms of which will be discussed later in this order. Subsequently, Avondale filed for voluntary reorganization under Chapter 11 of the Bankruptcy Code. *Id.*

As part of the bankruptcy proceedings, Avondale submitted a plan of reorganization to NBA and MMA.[2] *Id.* at 9. MMA voted to approve the plan. *Id.* NBA cast two votes to reject the plan, one vote on behalf of itself and a second vote on behalf of MMA. *Id.* When Avondale challenged NBA's casting of the second vote, the Bankruptcy Court held that the subrogation clause in the Subordination Agreement authorized NBA to vote on behalf of MMA (Doc. 8-4 at 39), struck MMA's ballot, and accepted NBA's ballot with two votes against the reorganization plan (*id.*).[3] Avondale has appealed the ruling.

## II.   Legal Standard.

Rule 8013 of the Federal Rules of Bankruptcy Procedure states:

> On an appeal the district court . . . may affirm, modify, or

---

[1] Avondale's request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

[2] NBA asserts that "[t]he Plan proposes to pay $1.3 million per year for approximately 20 years on account of [NBA's] Class 2-A claim while proposing that MMA's Class 3 claim will receive an immediate payment of $900,000 in full satisfaction of the Subordinate Debt." Doc. 14 at 8. Avondale does not dispute this assertion. *See* Docs. 8, 17.

[3] The Bankruptcy Court did not reach the issue of whether the subordination clause also gives NBA the right to vote on behalf of MMA. Doc. 8-4 at 39:21-23.

> reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

This Court reviews the Bankruptcy Court's conclusions of law *de novo*, but will not reverse the Bankruptcy Court's findings of fact unless they are clearly erroneous. *United States v. Olson*, 4 F.3d 562, 564 (8th Cir. 1993).

Under Arizona law, the construction or interpretation of a contract is a question of law for the court. *Hadley v. Sw. Props., Inc.*, 570 P.2d 190, 193 (Ariz. 1977). "[I]f possible, meaning should be given to every word and phrase of a contract." *Hyde Park-Lake Park, Inc. v. Tucson Realty & Trust Co.*, 500 P.2d 1128, 1131 (Ariz. App. 1972); *accord Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1144 n.9 (Ariz. 1993). "The ordinary meaning of language should be given to words where circumstances do not show a different meaning is applicable." *Chandler Med. Bldg. Partners v. Chandler Dental Group*, 855 P.2d 787, 791 (Ariz. App. 1993). When "the provisions of the contract are plain and unambiguous upon their face, they must be applied as written, and the court will not pervert or do violence to the language used, or expand it beyond its plain and ordinary meaning or add something to the contract which the parties have not put there." *D.M.A.F.B. Fed. Credit Union v. Employer Mut. Liab. Ins. Co.*, 396 P.2d 20, 23 (Ariz. 1964).

**III.    Discussion.**

    **A.    Standing.**

NBA argues that Avondale has no standing to appeal, asserting that MMA is the only party who may do so. Doc. 14 at 5-6. The Bankruptcy Code provides that a debtor "may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). In addition, Avondale has a direct financial interest in this issue as it concerns approval of Avondale's plan of reorganization. The Court agrees with the Bankruptcy Court's conclusion (Doc. 84-4 at 36) that the statute's broad language and Avondale's interest in approval of the plan grant Avondale standing to appeal NBA's vote.

- 3 -

**B.     Subrogation Clause.**

The dispositive issue on appeal is whether the subrogation clause (the "Subrogation Clause") in the Subordination Agreement authorizes NBA to vote on behalf of MMA. The Subrogation Clause reads as follows:

> 10.  Subrogation. [MMA] agrees that [NBA] shall be subrogated to [MMA] with respect to [MMA's] claims against Borrower and [MMA's] rights, liens, and security interests, if any, in any of the Borrower's assets and the proceeds thereof (excluding, however, [MMA's] rights under any pledge of Borrower's membership interests made under the Subordinate Debt Documents) until the Senior Debt shall have been paid in full, in cash.

Doc. 8 at 7:13-17; Doc. 14 at 10:11-16; Doc. 17. Because contract interpretation is a matter of law, *Hadley*, 570 P.2d at 193, the ruling below is reviewed *de novo*, *Olson*, 4 F.3d at 564.

**1.     The Effect of Subrogation.**

The parties argue that the Subrogation Clause unambiguously supports their respective positions. Doc. 8 at 14; Doc. 14 at 10. Under its plain language the Subrogation Clause subrogates NBA to MMA with respect to (1) MMA's claims against Avondale, and (2) MMA's "rights, liens, and security interests . . . [in Avondale's] assets and the proceeds thereof," with exceptions not relevant here. Doc. 8 at 7:13-17; Doc. 14 at 10:11-16. Avondale argues that MMA's right to vote is not encompassed by this language. Doc. 8 at 14. NBA responds by arguing that MMA's voting rights in Avondale's reorganization plan are part of MMA's claims, and that the subrogation of MMA's claims necessarily grants NBA the right to vote on behalf of MMA. Doc. 14 at 11. The parties do not argue that the Subordination Agreement provides an express definition for the term "claim."

As a starting point, the Court notes that the text of the Subrogation Clause does not expressly assign MMA's voting rights to NBA. This is unlike clauses in other cases where the right to vote has been expressly transferred. *See, e.g., In re Aerosol Packaging, LLC*, 362 B.R. 43, 45 (Bankr. N.D. Ga. 2006); *In re 203 N. LaSalle St. P'ship,* 246 B.R. 325, 328 (Bankr. N.D. Ill. 2000); *In re Inter Urban Broadcasting of Cincinnati, Inc.*, 1994 WL 646176, *1 (E.D. La. 1994).

Additionally, a "claim" under the United States Bankruptcy Code is a "right to

- 4 -

1 payment" or, where performance is required, "an equitable remedy for breach of
2 performance." 11 U.S.C. § 101(5); *Pa. Dep't. of Pub. Welfare v. Davenport*, 495 U.S. 552,
3 558 (1990) (reading "claim" broadly, as any legal obligation that would give rise to a debt),
4 *superseded by statute as recognized in In re Ryan*, 389 B.R. 710, 717 (9th Cir. BAP 2008).
5 Although the right to vote is not a "claim," it is a derivative right possessed by the holder of
6 a claim. *See* 11 U.S.C. § 1126(a) (stating that "[t]he holder of a claim . . . may accept or
7 reject a plan"). The critical issue, therefore, is the effect of subrogation on a claim holder's
8 right to vote on a reorganization plan.

9 Under Arizona law, "assignment and subrogation are not identical legal principles."
10 *Capitol Indem. Corp. v. Fleming*, 58 P.3d 965, 969 (Ariz. App. 2002). An assignment may
11 be limited to an individual right with regard to a matter. *See* Restatement (Second) of
12 Contracts ("Restatement") § 317(1) (1981) ("An assignment of a right is a manifestation of
13 the assignor's intention to transfer it by virtue of which the assignor's right to performance
14 by the obligor is extinguished in whole or in part and the assignee acquires a right to such
15 performance"); *Powers v. Taser Int'l, Inc.*, 174 P.3d 777, 782 (Ariz. App. 2007) (noting that
16 Arizona generally follows the Restatement).

17 Subrogation, by contrast, is the wholesale substitution of one party (i.e., "subrogee")
18 in place of another (i.e., "subrogor") with respect to a claim. *See Mosher v. Conway*, 46 P.2d
19 110, 473 (Ariz. 1935) (noting that the subrogee "steps into the shoes of the person to whose
20 rights he is subrogated"). Consequently, the subrogee succeeds to all of the subrogor's rights
21 under the claim. As the Arizona Supreme Court has explained, "[s]ubrogation is the
22 substitution of another person in the place of a creditor, so that the person in whose favor it
23 is exercised succeeds to the rights of the creditor in relation to the debt." *See Liberty Mutual*
24 *Ins. Co. v. Thunderbird Bank*, 555 P.2d 333, 335 (Ariz. 1976) (quoting *Mosher*, 46 P.2d at
25 112).

26 Under the Subrogation Clause, therefore, NBA steps into the shoes of MMA with
27 respect to the claim against Avondale and acquires all of MMA's rights with respect to that
28 claim. MMA's right to vote on Avondale's reorganization plan flows from its claim in

1 bankruptcy against Avondale. 11 U.S.C. § 1126(a). As a result, NBA succeeds to that right as subrogee of MMA and as the effective holder of MMA's claim.

Avondale argues that the Subrogation Clause limits subrogation only to certain rights related to the claim, not all rights. Doc. 8 at 14. Although Arizona has recognized partial subrogation, this principle would not limit the rights to which NBA succeeds – it would, if applicable, merely allow both NBA and MMA to proceed pursuant to the same bundle of rights. *See Tucson Gas, Elec. Light & Power Co. v. Board of Sup'rs of Pima County*, 1436 P.2d 942, 944 (Ariz. App. 1968) (recognizing partial subrogation and citing to *Bryan v. So. Pac. Co.*, 286 P.2d 761, 766-67 (Ariz. 1955)); *cf. Bryan*, 286 P.2d at 766 ("[I]f the insurer paid only part of the loss, then both the insured and the insurer have substantive rights against the tortfeasor which qualify them as real parties in interest." (quoting *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 381 (1949)).

### 2. Subrogation and Payment of MMA's Claim.

In Arizona, the right to subrogation can arise either by contract (conventional subrogation) or by the payment of the subrogor's claim by the subrogee (equitable subrogation). *Mosher*, 46 P.2d at 112 (summarizing equitable subrogation as "when one, being himself a creditor, pays another creditor, whose claim is preferable to his, it is held that the person so paying is subrogated to the rights of the other creditor"); *Fire Ins. Exch. v. Thunderbird Masonry, Inc.*, 868 P.2d 948, 951 (Ariz. App. 1993) ("Subrogation can be based either on specific language in the pertinent contract, known as conventional subrogation, or on the equitable doctrine of subrogation."). Where subrogation arises from contract, the language of the contract controls when the subrogation is triggered. *See Title Ins. Co. of Minn. v. Costain Ariz., Inc.*, 791 P.2d 1086, 1089 (Ariz. App. 1990) ("It is well settled that where an insured contracts with a third party *requiring* the latter to pay for loss or damage to insured property, the insurer, *upon payment of the loss*, is subrogated to the rights of the insured under the contract." (emphasis added)).

Avondale argues that the right to subrogation does not arise until subrogee NBA pays subrogor MMA's claim. Doc. 8 at 11. But this is not an equitable subrogation case.

- 6 -

1 Therefore, the language in the parties' contract controls when subrogation is triggered. The
2 Subrogation Clause states: "[MMA] agrees that [NBA] shall be subrogated to [MMA] . . .
3 until the Senior Debt shall have been paid in full, in cash." Doc. 8 at 7:13-17; Doc. 14 at
4 10:11-16. The plain meaning of the Subrogation Clause does not contractually condition
5 subrogation on payment of MMA's claim – instead, it makes subrogation effective from the
6 execution of the Subordination Agreement through payment of NBA's claim. Therefore, the
7 Court must reject Avondale's argument.

### 3. Enforceability of Subrogation in Bankruptcy.

9 Avondale also argues that the Subrogation Clause is not enforceable in bankruptcy
10 with respect to voting rights in a reorganization plan. Doc. 8 at 16-21. Avondale relies
11 primarily on *LaSalle* and *In re Hart Ski Mfg. Co.*, 5 B.R. 734, 736 (Bankr. D. Minn. 1980).
12 *LaSalle* held in part that "subordination" does not allow for waiver of voting rights
13 in bankruptcy because subordination "affects the order of priority of payment of claims in
14 bankruptcy, but not the transfer of voting rights." 246 B.R. at 331. *LaSalle* also held that
15 the rules of bankruptcy procedure, more specifically Fed. R. Bankr. P. 3018(c), require a vote
16 on a reorganization plan be signed by "the creditor or equity security holder or an authorized
17 agent." 246 B.R. at 331. Finally, *LaSalle* presented policy reasons why a subordinated
18 creditor should not be precluded from voting in bankruptcy notwithstanding a pre-petition
19 subordination agreement to the contrary. To the extent that *LaSalle* was limited to
20 subordination agreements, it is inapposite: the issue on appeal involves a subrogation clause.
21 *Hart Ski* is similarly inapposite. In contrast to a subordinated creditor, a subrogee steps into
22 the shoes of the subrogor and succeeds to the latter's rights. *Liberty Mutual*, 555 P.2d at 335.
23 It is true that a subrogation agreement is not enforceable under Arizona law with
24 respect to non-assignable rights. *See Fleming*, 58 P.3d at 970. Therefore, if a bankruptcy
25 creditor's right to vote a reorganization plan were non-assignable, the Subrogation Clause
26 would be unenforceable as to that right. Courts have held that reorganization-plan voting
27 rights are assignable. *See Aerosol Packaging*, 362 B.R. at 47; *Urban Broadcasting*, 1994
28 WL 646176 at *2; *In re Erickson Ret. Cmtys., LLC*, 425 B.R. 309, 316 (Bankr. N.D. Tex.

- 7 -

2010). The Court finds their reasoning persuasive in light of absence of precedent to the contrary. Accordingly, the Court concludes that the Subrogation Clause is enforceable in the Bankruptcy Court.

**IT IS ORDERED:**

1. The motion to substitute parties (Doc. 10) is **granted**. The Clerk shall substitute Avondale (2010) Holdings, LLLP as appellee in lieu of National Bank of Arizona.

2. The decision below is **affirmed**.

3. The Clerk shall terminate this action.

DATED this 11th day of April, 2011.

_____
David G. Campbell
United States District Judge